# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| IDS Property Casualty Insurance Company,<br><br>      Plaintiff,<br><br>  vs.<br><br>Frank and Bettina Gambrell, *et al.*,<br><br>      Defendants.<br><br>Frank and Bettina Gambrell,<br><br>      Plaintiffs,<br><br>  vs.<br><br>IDS Property Casualty Insurance Company;<br>Stacey Harrish,<br><br>      Defendants. | 2:12-cv-01227 JWS (Lead Case)<br>4:12-cv-00661 JWS<br><br>**ORDER AND OPINION**<br><br>[Re:  Motions at dockets<br>      5 and 7 in 4:12-cv-00661] |

## **I. MOTIONS PRESENTED**

Defendant Stacey Harrish ("Harrish") filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure at docket 5 in Tucson Case No. 4:12-cv-00661 ("Tucson Case"), which Harrish and Defendant IDS Property Casualty Insurance Company ("IDS"; collectively "Defendants") removed from Pima

County Superior Court. In the motion to dismiss, Harrish argues that she was an improperly named party against whom no cause of action can lie.

About two weeks after Harrish filed her motion to dismiss, plaintiffs Frank and Bettina Gambrell ("Gambrells" or "plaintiffs")[1] filed a motion at docket 7 to remand the Tucson Case back to Pima County Superior Court pursuant to 28 U.S.C. § 1447(c), arguing that there is not complete diversity because Harrish is a resident of Arizona. Defendants filed an opposition at docket 11 in the Tucson Case. While they acknowledge that Harrish is a resident of Arizona, they assert that she was "fraudulently joined" to the case while it was in state court, meaning they believe plaintiffs have no valid cause of action against Harrish, and thus, her inclusion was designed to block federal diversity jurisdiction.

The Gambrells asked the court to stay the briefing on Harrish's motion to dismiss until the court resolved the jurisdictional issues in the motion to remand,[2] but the court denied the request, opting to consider the motions together, given the similarity of the issue at stake in both motions – i.e., whether a claim of bad faith against Harrish exists under Arizona law.[3]

The court consolidated the Tucson Case with Phoenix case 2:12-cv-01227 ("Lead Case"), which is IDS's related declaratory judgment action against the Gambrells. After consolidation, the Gambrells subsequently filed their opposition to Harrish's motion to dismiss at docket 22 in the Lead Case and filed their reply to the motion to remand at docket 20. Harrish filed her reply to her motion to dismiss at docket 23 in the Lead Case. Both parties requested oral argument, but this court

---

[1]The Gambrells are the defendants in the Lead Case (2:12-cv-01227), but because the motions at docket 5 and docket 7 were filed in the Tucson Case, the court refers to them as the plaintiffs.

[2]Doc. 8.

[3]Doc. 21.

concludes that the briefing for the two motions is extensive and thorough and oral argument is not necessary.

## II. BACKGROUND

The two cases involving the Gambrells and IDS arise out of an automobile accident that occurred March 4, 2011, in which Frank Gambrell sustained personal injuries after another car crossed the center line and collided with the truck Gambrell was driving. The truck was owned by Frank Gambrell's employer. His medical expenses totaled over $87,000, and his loss of earnings totaled over $6,000. The Gambrells settled with the tort feasor's insurance carrier for the $15,000 liability limit. He then pursued a claim under the insurance policy that Gambrell's employer maintained on the truck involved in the accident. That policy had underinsured motorist coverage in the amount of $100,000, and Gambrell collected the full amount under that policy. But, because the amount Gambrell collected from the tort feasor's policy and his employer's policy was allegedly inadequate to compensate Gambrell, he filed a claim for $100,000 under his personal auto insurance policy that he maintained with IDS. IDS assigned Harrish to adjust the claim. They denied Gambrell's claim. Gambrells asked defendants to reconsider their denial and pointed out reasons why they thought the denial was improper, but defendants maintained their denial.[4]

On June 8, 2012, after the parties were unable to settle the claim, IDS initiated a declaratory relief action in federal court by filing the complaint in the Lead Case. In the complaint, IDS asks the court to judicially determine the parties' dispute over coverage. On July 25, 2012, plaintiffs filed the underlying complaint in the Tucson Case in state court. The complaint originally alleged a breach of contract and bad faith claim against IDS.[5] On August 3, 2012, shortly after defendants declined plaintiffs' request to

---

[4]The background facts are taken from the First Amended Complaint, which is filed at doc. 1-3 at p. 20 in the Tucson Case.

[5]Doc. 1-3 at p. 12.

stipulate to a remand in the Lead Case, plaintiffs filed an amended complaint in state court, adding Harrish as a defendant and alleging that Harrish was assigned to adjust the claim and that both defendants owed a duty of good faith and fair dealing to plaintiffs, which they breached when they refused without reasonable basis to provide benefits under the policy.[6] On September 4, 2012, defendants filed their notice of removal.[7] As noted above, after the motions to dismiss and remand were filed, the court consolidated the two cases, and all filings have since been lodged in the Lead Case.

### III.  STANDARD OF REVIEW

**A. Motion to dismiss**

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's claims. In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[8] Dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[9] Dismissal is not "confine[d] . . . to claims of law which are obviously insupportable."[10] Instead, a claim must be dismissed "without regard to whether it is based on an outlandish legal theory

---

[6] *See* doc. 1-3 at pp. 17-25.

[7] Doc. 1.

[8] *Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

[9] *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

[10] *Neitzke v. Williams,* 490 U.S. 319, 326-27 (1989).

-4-

or on a close but ultimately unavailing one."[11] "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."[12]

To avoid dismissal, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face."[13] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14] "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[15] "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[16] "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[17]

**B. Fraudulent joinder**

Defendants removed the Tucson Case from state court to federal court pursuant to 28 U.S.C. § 1441(a) based on the court's diversity jurisdiction. Although defendants acknowledge that Harrish's presence in the lawsuit destroys complete diversity because she is a resident of Arizona, they maintain that her presence is based on fraudulent joinder and, thus, can be ignored for purposes of diversity jurisdiction.[18] Plaintiffs filed

---

[11]*Id.*

[12]*Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[13]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[14]*Id.*

[15]*Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[16]*Id.* (quoting *Twombly*, 550 U.S. at 557).

[17]*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

[18]Doc. 1 at p. 3.

the motion to remand arguing that there is no fraudulent joinder issue and, thus, the case must be remanded pursuant to 28 U.S.C. § 1447(c).

Fraudulent joinder is a term of art.[19] A plaintiff's subjective intent does not play a role in the analysis.[20] Instead, fraudulent joinder exists, and the non-diverse defendant is ignored for purposes of determining diversity of the parties, if the plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state."[21] "In borderline situations, where it is doubtful whether the complaint states a cause of action against the resident defendant, the doubt is ordinarily resolved in favor of the retention of the cause in the state court."[22] It is only where a plaintiff has no possibility of bringing a cause of action against a resident defendant, and therefore has no reasonable grounds to believe he has such an action, that the court can conclude that the resident defendant has been joined to evade jurisdiction in federal court.[23]

Because there is a presumption against removal, the defendant has the burden of establishing that removal is proper and thus that fraudulent joinder exists.[24]

---

[19] *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

[20] *See Albi v. St. & Smith Publ'ns*, 140 F.2d 310, 312 (9th Cir. 1944) (stating that "it is universally thought that the motive for joining [a non-diverse] defendant is immaterial); *Selman v. Pfizer, Inc.*, No. 11-CV-1400, 2011 WL 6655354, at *10 (D. Or. Dec. 16, 2011) (rejecting an intent test for fraudulent joinder).

[21] *McCabe,* 811 F.2d at 1339.

[22] *Albi*, 140 F.2d at 312.

[23] *Id.*; *see also Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993) (finding of fraudulent joinder appropriate only if there is no possibility that a claim can be stated); *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003) (if there is a "colorable" cause of action, joinder is not fraudulent and remand is mandatory).

[24] *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

## IV. DISCUSSION

The court is confronted with two motions presenting the same issue but with different standards of review. Because the standard for proving fraudulent joinder is more exacting than that for dismissing a claim for failure to state a claim—a merely possible claim against a defendant is not enough to survive a 12(b)(6) motion, but it is sufficient to defeat an assertion of fraudulent joinder and prevent removal—the court will address the motion to remand first.

Defendants argue that the duty of good faith and fair dealing stems from a contract and because she is not a party to the insurance contract, Harrish cannot have acted in bad faith. Indeed, Arizona courts have held that there is no cause of action when a *third-party claimant* who was not a party to the insurance contract tries to sue the tortfeasor's insurance company for bad faith in failing to settle his claims.[25] Arizona courts have also held that an insured or his assignee may not sue his insurer for negligent handling of claims that is separate and distinct from the claim of breach of contract or bad faith.[26] Similarly, the Arizona courts have held that an insurance company's adjuster did not owe a duty to the insured in the context of a negligence claim.[27] However, in the context of a bad faith claim brought by an insured against the insurance claims adjuster, there is no Arizona case law directly on point to support defendants' argument. Instead, as plaintiffs point out, in *Farr v. Transamerica Occidental Life Insurance Co. of California*,[28] the Arizona Court of Appeals found that both the insurer and the insurer's agent owed a common duty to the insured to act in good faith despite the agent's lack of contractual privity. It reasoned that the insurer

---

[25] *Leal v. Allstate Ins. Co.*, 17 P.3d 95, 98-99 (Ariz. Ct. App. 2000).

[26] *Miel v. State Farm Mut. Auto. Ins. Co.*, 912 P.2d 1333, 1340 (Ariz. Ct. App. 1995).

[27] *Meineke v. GAB Bus. Serv. Inc.*, 991 P.2d 267, 271 (Ariz. Ct. App. 1999).

[28] 699 P.2d 376 (Ariz. Ct. App. 1984)

and its agent were engaged in a joint venture, even if some of the classical elements of a joint venture, such as profit and loss sharing or joint right to control, were lacking.[29]

While the holding in *Farr* could certainly be distinguished in this case because, unlike the adjuster in *Farr*, Harrish is an in-house employee and not a third-party entity hired to administer claims,[30] Arizona courts have not specifically addressed the issue. Harrish cites to *Walter v. Simmons*[31] to argue that the state courts have, in fact, resolved the issue. In *Walter*, the Arizona court held that the plaintiff's voluntary dismissal of the bad faith claim against the adjuster did not require dismissal of that same claim against the insurer. The dismissal of the adjuster and the reason for his dismissal were not at issue in the appeal, but the court nonetheless stated that the independent adjuster "was dismissed from the bad faith claim because he owed no contractual duty to act in good faith or deal fairly with [the insured]."[32] That statement was not necessary to the holding, was not expressly deemed a guide for future conduct, and does not provide reasoned consideration of the issue; thus, it is merely dicta.[33]

While the court is not bound by other decisions in this district on the issue, judges have repeatedly concluded that the law surrounding the viability of a bad faith claim against an insurance adjuster is unsettled in Arizona. In both *Ballesteros v. American*

---

[29] *Id.* at 386.

[30] It is undisputed that Harrish is an employee of IDS. See docket 7, pp. 6-7, n.3.

[31] 818 P.2d 214 (Ariz. Ct. App. 1991)

[32] *Id.* at 222.

[33] *See Phelps Dodge Corp. v. Ariz. Dept. of Water Res.*, 118 P.3d 1110, 1116 n.9 (Ariz. Ct. App. 2005) (discussing what should be considered judicial dictum and thus should be followed absent a cogent reason for departing from it and obiter dictum that does not have precedential value but can be persuasive); *McOmie-Gray v. Bank of Am. Home Loans*, 667 F.3d 1325, 1329 (9th Cir. 2012).

*Standard Insurance Co. of Wisconsin*[34] and *Allo v. American Family Mutual Insurance Co.*,[35] the district courts concluded that it is unclear in Arizona whether an adjuster employed by an insurance company could be held liable for bad faith. The magistrate judge in *Wapniarski v. Allstate Insurance Co.*[36] also addressed this issue and found the reasoning in *Ballesteros* persuasive and remanded the case back to state court.

Defendants cite to two other District of Arizona cases, *Huffman v. American Family Mutual Insurance Co.*[37] and *Didyoung v. Allstate*,[38] to support their position. But those two cases are inapposite. *Huffman* presented a different issue altogether: whether the plaintiff could amend her complaint to add a non-diverse defendant *after* the case had been removed to federal court. In determining whether the plaintiff could amend to add a non-diverse defendant, the court looked at the strength of her bad faith claim against that defendant and found that it was weak because the covenant of good faith and fair dealing is inherent in a contract, and there was no contract between the proposed defendant and the plaintiff. But, the court in *Huffman* was applying different standards altogether and furthermore, the court agreed that "Arizona courts have not squarely rejected [the plaintiff's] proposed theory."[39]

---

[34] 436 F. Supp. 2d 1070 (D. Ariz. 2006).

[35] No. CV-08-0961, 2008 WL 4217675 (D. Ariz. Sept. 12, 2008).

[36] No. CV-10-0823, 2010 WL 2534167 (D. Ariz. June 18, 2010).

[37] No. CV-10-2809, 2011 WL 814957 (D. Ariz. Mar. 4, 2011).

[38] No. CV-12-348, 2012 WL 1983779 (D. Ariz. June 4, 2012).

[39] 2011 WL 814957, at *3 (D. Ariz. Mar. 4, 2011).

*Didyoung* was considering the issue of fraudulent joinder, but the claim was not a bad faith claim but rather a negligence claim,[40] and under Arizona law, as discussed above, it is clear that an insurance adjuster is not liable for negligent claim handling.

Given the holding in *Farr,* that the claims administrator was engaged in a type of joint venture with the insurer and thus could be jointly and severally liable with the insurer, the court must concur with the prior decisions in this district and conclude that Arizona law is not fully settled as to whether an insured can bring a bad faith claim against an in-house insurance adjuster. The court acknowledges Harrish's argument that an employee and employer cannot form a joint venture, but, as noted above, *Farr* did not require a finding that all elements of joint venture be present in the insurance context. Although the court is not persuaded that the reasoning in *Farr* would be applicable to an in-house employee, there is no state case directly on point, and the court must resolve any ambiguities in favor of the plaintiff.

Furthermore, when looking at the issue of fraudulent joinder, the court has to consider whether the plaintiffs have at least a reasonable ground to believe such a claim could go forward.[41] Given the district court decisions in *Ballesteros* and *Allo* that found the issue unsettled, there is, in fact, a reasonable basis for the Gambrells to move forward with the bad faith claim against Harrish. While it is a close call, as noted above, ambiguity in the law must favor the plaintiff, and the prior district court cases persuade the court to conclude that Arizona law has not yet closed the matter.

Because this court finds that there is no fraudulent joinder, it cannot ignore Harrish's presence in the suit. As such, complete diversity does not exist, and the court

---

[40] 2012 WL 1983779 at *4 ("[T]he legal theory asserted against [the adjuster] sounds neither in breach of contract nor in bad faith. Rather, . . . the claim against [the adjuster] is limited to a claim sounding in negligence.").

[41] While the defendant notes that the procedural history of this case suggests Harrish was only added to destroy diversity, the plaintiffs' actual motive is not part of the analysis.

-10-

must remand pursuant to 28 U.S.C. § 1447(c).  Given that the case has been remanded, the motion to dismiss Harrish for failure to state a claim is now moot.

### V.  CONCLUSION

Based on the foregoing analysis, plaintiffs' motion to remand at docket 7 in Case No. 4:12-cv-00661 is **GRANTED**.  Defendant Harrish's motion to dismiss at docket 5 in Case No. 4:12-cv-00661 is **DENIED AS MOOT**.  Case No. 4:12-cv-00661 is hereby severed from Case No. 2:12-cv-01227 and remanded to Pima County Superior Court, and the Clerk of Court shall enter judgment and close the file in Case No. 4:12-cv-00661.  Case No. 2:12-cv-01227 shall remain on this court's docket for disposition in due course.

DATED this 21st day of December 2012.

/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE